Torres v. Ball, Mr. Harawa, welcome back. Good morning, your honors, and may it please the court. So it's good to be back. I get to sit down today and introduce third-year law students at NYU Law, Zach Sanders, Sophie Spears, and Daniel Cook. Ms. Spears and Mr. Sanders will be arguing under my supervision. Thank you. Very well, thank you. Welcome, Mr. Sanders, whenever you're ready. Thank you, your honors. Good morning, and may it please the court. Zachary Sanders for the appellant, Jonathan Anthony Lee Torres. I'm reserving seven minutes for rebuttal, from which you'll hear from my colleague, Sophie Spears. Mr. Torres' Section 1983 suit against Sgt. Nathan Ball presents critical questions under the Fourth Amendment, which must be resolved by a fact finder. The district court erred in evaluating Sgt. Ball's motion for summary judgment in two critical ways, and each of these errors independently require reversal. First, exit questions of material fact and questions surrounding Sgt. Ball's credibility precluded a grant of summary judgment in Sgt. Ball's favor. The open, factual issues in this case go directly to the question of whether or not Sgt. Ball had reasonable, articulable suspicion to pull over the green Honda. By drawing inferences in Sgt. Ball's favor, and by ignoring the inconsistencies within his police report and litigation affidavit, the court both violated the well-established dictate to draw inferences in favor of the non-moving party at summary judgment, and it impermissibly made credibility determinations. Assessing credibility is the paradigmatic jury fact finder role, and the district court's improper assumption thereof requires reversal. Second, the district court failed to conduct. Credibility determinations were made that were improper in your estimation. So, Your Honor, the district court ignored the inconsistencies between his police report and his affidavit. From the initial contemporaneous police report to the affidavit, Sgt. Ball added critical. May I ask you to slow your speech down a little bit? Sure, I apologize, Your Honor. I'm having a hard time following. I'm sorry, Your Honor. So, between the presentation of the contemporaneous police report and his litigation affidavit, Sgt. Ball added critical details which were relevant to the reasonable suspicion inquiry, and that's the underlying law to which these facts are material. The fact that he added details from the initial police report to the litigation affidavit go directly to the question of whether or not he had reasonable articulable suspicion to pull over the green Honda on the morning of March 3, 2018. I'm sorry, is your argument that, right, there are additional details in the affidavit? Is the idea that the judge should not have treated those as credible, is that the idea? That because they weren't said the first time, they are likely not true? Your Honor, we're not necessarily alleging that one way or the other. Is there like a factual, on some of them, this is, I'm trying to figure out, I guess, sort of why this matters. Sure. Like, is there a dispute of fact, say, like, you know, we're on summary judgment, and I understand that your client would have, you know, had sort of limited insight to some of these issues, but is there like a real dispute of fact in this case as to say whether this confidential informant had provided reliable information in the past? Well, in fact, Your Honor, we don't know anything about this confidential informant. There's absolutely nothing on the record. But usually, like the usual rule is, the police officer submits the affidavit. He swears to it. Like, we assume it's true, unless there's some good reason not to. And I guess I'm asking you, is the point behind this kind of credibility argument that actually the district court erred in treating that as true? Yes, Your Honor. That's exactly what our argument is. The fact that these details were added initially and the fact that they were critical to the determination of reasonable suspicion, we think, is directly material to the question of whether or not Sergeant Ball had reasonable suspicion to believe that Mr. Torres was the driver of the grand condo. So at trial, the idea is that if summary judgment had not been granted, then at trial, you guys would get up and say, no, the officer was lying when he said that this confidential informant had never provided reliable information in the past. Well, we certainly would leave it to the jury to make that determination, Your Honor. But our argument is the fact that we don't have any of those indicia of reliability that the court usually relies upon to determine whether or not an anonymous informant is reliable or not, the fact that we don't have anything. But that's a different argument. Sure. That's sort of even assuming the affidavit maybe. I'm just – I read this part of the brief and I understood the points, I think, that you were trying to make. I didn't quite understand the import, like where you wanted us to go with this idea that there seems to be more detail in the affidavit than there was in the original report, which struck me as not that unusual. Like, you know, it's not inconsistent. It's just there's a little more information once you sit down to write your litigation affidavit. Sure. Your Honor, I understand that on their face the details may seem somewhat semantic or, you know, maybe – It's not that surprising that, you know, you write out your first report and then – like, it's not necessary – it doesn't – I don't think we usually treat it as going – bearing on an officer's credibility if, say, at the suppression hearing they get up on the stand and they have more detail in their account than they had in the original police report. Well, the problem, Your Honor – and this is the reason why I started to get to the argument about the anonymous tip and the details we have is because these details go directly to that question. They go directly to the question of whether Sergeant Ball had enough information to connect the information that he had in his tip directly to Sergeant Ball being the driver of the green Honda that he saw. All we know about this confidential informant is that it was someone that he relied upon – or, I'm sorry, to quote more directly, it was a reliable confidential informant from whom he has received reliable information in the past. Across various precedents of this Court and the Supreme Court, this Court has never deferred merely to an officer's say-so that a confidential informant is reliable. There always is something more in the record, like, for instance, testimony as to how many times the informant has provided reliable information or specific cases where the informant has provided reliable information without revealing the informant's identity. That's not necessary. What about our decision in Bynum which seemed to sanction sort of just a blanket statement from an officer that this is someone who's reliable, who's provided reliable information in the past, full stop, that's it? And we said – apparently said that that was good enough there. I'm not sure that we read Bynum that way, Your Honor. Tell me how you read it. Well, we read it to say that the officer needs to have more – that we need to have more than just the officer's say-so. And we know of – Well, here's the – I mean, here's the money quote, and you tell me what's – the majority opinion says this. Although certainly it would have been preferable if the agent had expressly stated in his affidavit the basis for his statement as to the informant's reliability, he did at least swear to the magistrate that he was relying on a known and proven confidential source, not a never-known, never-verified tipster. Isn't that what we have here? No, Your Honor. We don't believe that that's what we have here, because if I'm remembering the facts of Bynum correctly, and I apologize, I'm a little bit hazy on the specific facts, but there were other things that the officer did after relying on the tipster to corroborate the tip. And Sergeant Ball didn't do any of those things here. I'm sorry. Just before we move on from this, I thought, like, the cases you cite for this are cases where the officer just says he's reliable. And this one does seem different to me. Here the officer is saying he's reliable. Oh, and you want to know why I think he's reliable? Because in the past he's provided me with reliable information. And I, much like Judge Diaz, I had trouble finding a case of ours saying that that's not enough. Well, Your Honor. There are cases where there's been more. I agree with you. And, you know, the more the better. No question. Yeah. But I couldn't find a case saying that that's not enough. And it does seem to me that that is different from just per se. Well, trust me, I'm not telling you why, but he's reliable. Sure. Your Honor, so the reason why we also haven't been able to find a case that says specifically that's not enough is because in all the cases we found, there's been more. In all the cases, there have been more details in the record about, you know, for instance, even the Supreme Court case, McCrae v. Illinois, where the officer testified specifically as to the number of times he'd relied on the informant and specific cases where the informant's information was deemed to be dispositive. And they're simply the only case that we were able to find where an officer's say-so was the only thing that was in the record before the officer went and made the investigatory stop. It's a North Carolina Supreme Court case, State v. Hughes. No, that one's different because that one was just he's reliable. It didn't even go on to say, and the reason I know that is because in the past, he has given me reliable information. Well, either way, in that case, the officer actually went and did even more than Sergeant Ball in this case did. It was in the middle of the day. The subject of the investigation gets off a bus stop where the informant said that he might get off a bus stop. He got into a car, as the informant said he would, and he started driving. The problem there is that there wasn't enough corroboration. The officer is pulled over the car before the car got off. If I understand it correctly, the highway divides at one point, goes one direction or the other. If he went in this direction, the tip is corroborated. Went in this direction, the tip is not corroborated, and the officer pulled him off before he got to that divide. So he was never able to corroborate that detail that he was heading in that direction. And that predictive quality of the information is something that has been deemed dispositive, particularly by the Supreme Court in the Alabama v. White case, where the tipster said that there would be an individual who was leaving from a hotel at a particular time, driving a particular car, carrying a briefcase that would have drugs in it, and would be driving to a particular location. And that's exactly what happened. The officer didn't conduct the investigatory stop there until the subject actually was driving in the direction of the hotel. Don't we have some of that here? It turned out that some of the things the tipster said were, in fact, accurate, right? So accuracy and predictive quality, we believe, are two very different things. The fact that Sergeant Ball went to the address that he had and he saw the car there does nothing to connect those two pieces of information to Mr. Torres. Predictive content would have been, for instance, another address that Sergeant Ball had on file for Mr. Torres was 45 Edwards Road. And, in fact, that's the address that he received in the ComStat presentation. If he had waited for the car to pull out of the driveway and then drive to 45 Edwards Road and he saw the car went to 45 Edwards Road, then we'd be within the Alabama v. White situation. I don't get that. That seems like, in your hypothetical, there are three pieces of information and you've corroborated that all three of them go together. In this case, there were two pieces of information, and the officer did corroborate that they would, you know, they would match up. But he didn't corroborate, there was nothing that he did to corroborate that the individual getting into the car or driving away was Mr. Torres. But that's White, too, where in White they say, look, you didn't corroborate what really mattered about this tip, which was that he's doing anything illegal. They're like, right, the ultimate point of the tip you were unable to corroborate, but that's fine. And this seems just like that to me. You weren't able to corroborate, you were right, the ultimate point, that the person who is associated with these two things that go together, the car and the house, is the guy you're looking for, but you were able to corroborate the rest of it. Well, the difference here, Your Honor, is that here the tip was just alleging Mr. Torres' identity. The tip was just alleging that Mr. Torres would be the person. I'm sorry, just before we leave Alabama v. White. Sure. That one was, if I'm remembering right, a completely anonymous tipster. And here, putting to one side all the reliability stuff, this is a known person. This is not an anonymous tipster. This is the officer's confidential informant, and if he sends him up to the top of the mountain at 3 a.m. for no reason, there's going to be blowback. So this is a very different kind of case, I think. Well, we don't—respectfully, Your Honor, I disagree with that characterization because this tipster didn't send Sergeant Ball to the mountain at 3 in the morning. He just sent Sergeant Ball to the mountain. He didn't say he would be there at 3 in the morning. He sends him to the mountain for no reason. Well, but I— There's going to be blowback. The reason I make the point of saying that is because if he had said, at 3 in the morning you're going to find Mr. Torres in the driveway or early in the morning you're going to find Mr. Torres there, that would be a different case. That is the predictive quality that this Court has found dispositive. In other cases, the fact that predictive quality shows an intimate knowledge of the subject's affairs, and we just don't have that here. Again, there's so many other things that Sergeant Ball could have done to find either that predictive content or satisfy one of the other indicia of reliability, and he just didn't do that here. I'm sure my colleague on rebuttal will get to what some of those things are, but for now I just—I see my time has expired, so just to conclude briefly, if Your Honors don't have any other questions, I'd like to just reiterate that both the extant factual questions as well as the District Court's misapplication of Fourth Amendment case law militate strongly against summary judgment in this case, and we respectfully ask this Court to reverse, remand, and allow this case to proceed to a fact finder. Thank you, and I'll leave the rest of our time to Ms. Spears on rebuttal. All right. Thank you, Mr. Sanders. Mr. Ingersoll. Thank you, Your Honor. And if it pleases the panel, my name is Mike Ingersoll, and I represent defendants in this matter. As the panel is clearly aware, in no small part due to, frankly, very good argument by my opposition, this case involves an investigatory traffic stop that took place in Buncombe County, North Carolina, just outside of Asheville, March 3, 2018, a little over five years ago. That night, Sergeant Nathan Ball, a 20-year veteran of law enforcement and at the time had over 16 years of law enforcement experience, was on patrol in Buncombe County, acting on a slew of information he had in addition to a confidential informant's tip, which we've already addressed. Officer or Sergeant Ball, excuse me. What was the information he had in addition to the tip? We take away the tip, what is left of the information that Officer Ball had. Thank you, Your Honor. So what do we know Sergeant Ball knew at the time of the stop? Because under Terry, Ohio, reasonable suspicion is based on totality of the circumstances, and on what the officer knew at the time. So at the time, Officer Ball knew that he knew who Jonathan Torres was, he knew what Jonathan Torres looked like, he knew where Jonathan Torres could likely be found, and that was from two sources. One was Detective Eric Taylor, who was the detective supervising and overseeing the warrants that were out on Mr. Torres, and then the other was the 130 Flat Top Mountain Road address, which he got from the confidential informant. Right, but we're just talking about not the confidential informant. So he knew the Edwards address and what he looked like and that there were warrants out in an attempt to locate. Yes, Your Honor, and he also knew his criminal history. I'm sorry, I just want to make sure. He didn't have this address, the Mountaintop address, from anyone but the confidential informant, right? That's correct, Your Honor. So he knew his criminal history, he knew that involved drug offenses, weapons charges, violent crimes. But without the confidential informant, was there anything that would have made him think the person in this car when he pulled it over was the person he was looking for? I've thought long and hard on that question, and I think the answer is no. And I concede that because I don't think there's any dispute here that the confidential informant tip is the connective tissue here. Sergeant Ball would have never been at 130 Flat Top Mountain Road. It's the sole ground you have for reasonable suspicion that when he pulled that car over, the person in the car was Mr. Torres. I think it's the sole grounds we have for reasonable suspicion that the car was Torres's, and then ultimately there was corroboration that Torres was the one driving, and the reason he knew it was Torres driving was because from the ComStat meeting he knew... It wasn't Torres's, he stole it, or somebody stole it. It was the car he was driving. It wasn't what Torres owned, yes, Your Honor. I'm sorry, but you think that you were about to say there was something beyond the confidential informant's tip would have told him that when he pulled that car over, Torres was in it, and what was that? Well, that he knew something would have told him that Torres was the person driving and that something was the information he'd received from the ComStat meeting. He knew what Torres looked like. He knew Torres was a male. He knew specific characteristics about Torres. Did he say that before he pulled the car over, he saw that the driver was Torres? No, he did not say that. It wasn't a well-lit area, was it? Much hay has been made of that, Your Honor. In the briefing, there's a lot of discussion regarding topographical information and weather data and things like that, how high the moon was and how much light there might have actually been naturally and the positioning of where Sergeant Ball might have been. All of that goes to their credibility argument, and they try to make a factual dispute out of that or at least a genuine issue of material fact to preclude summary judgment. All of that, I think, goes to subjectivity, and reasonable suspicion is an objective test. It's what the officer knew. It's what the officer perceived, the information he had at his disposal at the time. What Sergeant Ball has said is that he could see the vehicle that was described in the tip, including its specific characteristic of a dark green paint job, dark tinted windows, and then he said in his affidavit that he saw a male figure walking around the vehicle. He knew Torres was male. The CI information is the linchpin. What is your best case law support for what he said about the CI was enough, that the officer said, you know, the guy's given me reliable information in the past, without any details to corroborate how he was reliable in the past? Yes, Your Honor. So in terms of whether the tip was, you know, assuming that it's a known informant, and we can talk about whether, you know, hypothetically if it was an unknown informant, but assuming it's a known informant, number one, there is no need to specifically identify Mr. Torres before Sergeant Ball pulled him over. There's a case out of the Middle District of North Carolina, United States v. Rogers, that this court affirmed in 2014. The cite for that is 583 Federal Appendix 54. In that case, the court held, and this court affirmed, that corroboration of innocent facts, as opposed to criminal conduct, can be sufficient in terms of corroborating a known informant's tip. In that case, law enforcement officers were looking for guns. It ultimately was a search and seizure case, but they analyzed the stop that was involved also. The officers consulted a known informant. That informant, while he or she may have had biases against the suspect, provided a tip that- United States v. Rogers? Yes, Your Honor. In your briefing? It is not in our briefing, Your Honor, no. So have you provided a copy to opposing counsel or to us? We have not, but we will provide a copy of that after the hearing, Your Honor. So, again- Counsel Rogers apparently is about corroboration of a tip. It's about corroboration, but it goes to sort of what has been characterized as like a bare-bones tip. And I think that the tip that I'm about to describe in Rogers was substantially- provided substantially less information than what we have here, and it was deemed sufficient. Okay, but I thought Judge Thacker's question, and Judge Thacker should correct me if I'm wrong, went to the reliability of the informant and case law. What is- And maybe you're saying we should not treat this informant as reliable, and it doesn't matter because there was enough that was corroborated. But I thought you were arguing that, you know, the officer says, he's given me reliable information in the past, and we should take from that that he is a reliable source, and is there any authority for that? That that is enough. Yes, Your Honor. So I would argue that that is enough. I believe that Judge Harris, you made the astute point earlier that typically this is how this works with affidavit evidence. There is no competing affidavit evidence offered by Mr. Torrance. No, no. The point I was making is that we should-I was making a different point. And I wasn't really making a point. It was a question. But it went to whether we should be using basically the affidavit version of the source. And the affidavit version is this is someone who has given me reliable information in the past. Assuming that that is credible, why is that enough? I believe the Rogers case is one example of where having officers stating that it was a reliable informant that we knew in the past was sufficient. The corroboration of that tip, obviously, if you backfill it, it lends to reliability. In that case, it was a tip regarding someone, again, they were looking for guns, that the suspect would have a gun in a camouflage case with him. He may be riding in a blue and silver minivan, no make, model, multiple colors on the minivan, that his girlfriend would be driving. And he may be a passenger in that vehicle when his girlfriend goes to work at, I believe, she worked at a gas station. Based on that tip and the fact that it was a known informant who had provided information in the past, officers acted on it, and they ultimately stopped them. They saw the vehicle out on the main road. It wasn't a situation like this where Sergeant Ball saw Mr. Torres and the vehicle that was described to Sergeant Ball at the end of a dead end street, at the only house at the end of that street. This was out in public. They sort of happened upon the vehicle. Go ahead. Let me just say this. I will read the Rogers case. My concern here, I guess, would be that, you know, he does say he gave me reliable information in the past, but we don't know, you know, how often. We don't know if he was always right. Maybe he gave him ten tips and one of them was correct. So, yeah, he gave me reliable information in the past, but nine times he gave me unreliable information. We don't know anything about how the confidential informant himself knows this to be true. Like, did he see Torres in this car at this house or did someone just tell him, oh, yeah, Torres. He's that guy at that house with that car. Like, we don't have a lot to go on here. And given that the tip is the only basis for pulling him over, it's ‑‑ I want to give you a chance to address what would be the concern here. Yes, Your Honor, and I do understand the concern. And I think what we talked about earlier was if we wanted to treat this as an unknown informant, it just makes the hurdle a little higher to clear, but it doesn't make it insurmountable here. I believe if we assume and we accept from the affidavit evidence, which, again, is the only record evidence that we have that would be admissible at summary judgment, as Sergeant Ball testified in his affidavit, it was a known informant who provided information in the past. If we accept that as true, the inquiry isn't over in terms of whether there was ‑‑ on reliability, whether the informant was reliable enough to then provide reasonable suspicion for the Terry stop. But the hurdle is lower. If we assume that it's an unknown informant, I think there are still adequate facts here. I don't think there's any dispute that the tip happened. So ‑‑ and Judge Reidinger, out of the Western District of North Carolina, noted in his opinion, I believe it's Joint Appendix 322, you'll see at the beginning of the factual recitation, he makes very clear that all the facts recited therein, unless otherwise noted, are not in dispute. What's not in dispute, I believe, is that the tip happened, and though there may be some argument about the semantics of a couple pieces of that tip, generally speaking, the tip described a dark green Honda Accord, or a Honda car, if we default to the police report. That Honda Accord had a unique characteristic, which was dark green tinted windows. It provided a location, and the tip provided that Torres would be the one driving that vehicle. Not that he owned it, we obviously found out later that he didn't. But that he would be the one operating that vehicle. All of those details ultimately were true. Torres was found in that vehicle. He was found at the location. You're not allowed to do it that way. You can't reason backwards from what turned out to be the case when you made a stop, right? It has to be what the officer knew before he made the stop. Yes, Your Honor, and again, I think what Officer Ball knew at the time was he knew what Torres looked like. He knew Torres' tattoos, specific characteristics about Torres. He knew where Torres ‑‑ he knew his address. He knew specifically where Torres lived, based on the CompStat information. He knew ‑‑ None of that was relevant. I believe Torres' official ‑‑ I can't remember the specific street address, but I believe it was in Fairview, North Carolina. So he knew where Torres lived. He knew Torres lived in the area. He understood ‑‑ he knew Torres' criminal history from his own independent research into his criminal history. He knew the charges that were against him. He had outstanding warrants. But what did any of that have to do with, like, the question is when he pulled the car over, did he have reasonable suspicion that Torres would be in it? I believe, again, going to Sergeant Ball's affidavit, he states that he saw a male figure walk around the back side of the vehicle that he'd positively identified from the vehicle. So are you saying he would have had any male he saw in one of these cars he could have pulled over? I don't think ‑‑ Whatever it was, a green Accord or ‑‑ It's not that it's any male, but, again, reasonable suspicion is determined from the totality of circumstances. Based on everything that Sergeant Ball had at his disposal at that time, he believed that he had Jonathan Torres in that vehicle. And, again, identification of the driver of the vehicle, there is case law where identification of the driver of the vehicle is not known prior to initiating the stop. It's just suspected based on very similar facts to what we have here. There's an Eighth Circuit case, United States v. Shields, which I'll provide to the panel and to my opposition afterwards. United States v. Shields is an Eighth Circuit opinion. In that case, again, search and seizure, but they describe the Terry stop that took place. In Shields, there was a warrant out for a Brian Shields. Officers were looking for Brian Shields. Are you saying this is another case that's not in your brief? Yes, Your Honor. This is a case that's not in our brief, and I will provide it to the panel. And to opposing counsel. Yes, Your Honor. Of course. Can I, before you get to Shields, ask you how this is at all relevant? So one of the purposes of the requirement of reasonable suspicion is to ensure that an officer is able to narrow what he or she is looking for so that it doesn't dragnet innocent travelers on the highway. Here we're in a sort of isolated area up on a mountaintop. There's not a lot of traffic going around, and so you've got the officer identifying the car which the tipster described, apparently consistently with what the tipster described. And admittedly, he doesn't identify towards right away, but does that somehow make it more reliable, the fact that the surrounding circumstances in which the officer found the vehicle? Yes, Your Honor, I think it does. I also think what's certainly pertinent here is the fact that, like I mentioned earlier, Sergeant Ball is a 20-year law enforcement veteran, had 16 at the time. Most of that was in Buncombe County. He knew the area. He knew the population. He knew the roads up there, flattop mountain roads. It's a two-lane road. It's not a highway. I mean, there's not a lot of cars traveling up and down the road. So he sees a car that appears to be consistent with the informant's tip. That seems to me to be relevant. Well, he sees – I think we can take it one step further, Your Honor. I agree with you. I think that what he sees is he sees a car that matches the tip at a location that the tipster gave him at the end of a dead-end road where it's the only house at the end of that road, again, being the location that he was given. So there are several circumstances and several facts that Officer Ball knew about the vehicle and then saw a male figure walking around the vehicle that it was reasonable for him, again, under a much lower Terry standard, it was reasonable for him to at least take the extra step of initiating a stop to confirm whether the person he thought was Jonathan Torres driving that vehicle was, in fact, Jonathan Torres. And, of course, we know that it was. Can I ask you a question? So you said at one point, like, look, there's this reliability issue. But even, like, if we just assume this is an entirely anonymous tip, treat it like an anonymous tip, there's still enough here. And I think what you're saying is enough of this was corroborated. It's not the right word. Yeah, corroborated, that he corroborated enough of this. Yes, Your Honor. So even if it had been anonymous, it would be enough. Like, I feel like in most areas. But, you know, this is, even if we don't want to say, you know, if you think of reliability kind of on a spectrum, like maybe this isn't all the way over to sort of a named informant or an informant where you have a huge amount of information about their past performance. But it's also not quite an anonymous. It's sort of somewhere in between. And I think in most areas of the law you say, like, look, if you're not all the way there, like if you're not at, there's no kind of close enough. If you're not all the way there, just forget it. But it does strike me that reasonable suspicion being a somewhat low practical kind of a standard, this might be the kind of context where you could say, like, do we have everything we would want on reliability? No, we don't, but we've got something. You know, do we have, like, the kind of perfect corroboration we would like to have? And we do have in some of these cases where there's a lot of kind of personal predictive information that was corroborated. Not quite, but we've got some corroboration. And when we kind of mush it all together, we have enough for reasonable suspicion. Do you see what I'm saying? I do, Your Honor, and I agree. And I believe that also goes to a point that Judge Diaz made earlier on the opening, which was don't we have at least some semblance of predictive information here?  But even if an unknown tipster, the vehicle with the specific characteristics that the tipster gave was found at the location the tipster said it would be found at, and it was being driven by the person the tipster said would be driving it. Well, he didn't know when he pulled him over that it was being driven by, all he knew was it was being driven by a man. Of course. Yes, Your Honor. Actually, all he knew was that, he didn't really know anything, he knew that a man had been seen near the car shortly before at 3 a.m. It went driving past him, so let's give him the man is in the car. Yes, Your Honor, and I understand your point that there was no positive identification of Torres prior to initiating the stop. Again, our position, and I believe the case law reflects through various circuits, including this one, that that isn't necessarily required. It's certainly something to be considered. If you had it, it would be great, but we don't hear, but we don't necessarily need it. I see I've got about three minutes left here. Can I just ask you to address one thing on sort of the differences between the affidavit and the investigative report? You know, the one thing that seems somewhat substantial to me was that, although the police report doesn't exactly say he stopped Torres because the car was reported stolen, it does sort of imply that. It certainly seems to suggest that he knew the car had been, he called in the license check before he made the stop, and then that turns out not to be right. Like when we get to the affidavit, it's like, no, no, I didn't find out the car was stolen until after I made the stop. I mean, that's a pretty substantial change, no, in like the chronology of events. What happened here? No, I understand that, Your Honor, and I saw that argument in a briefing, and I think, you know, the chronology argument, it makes sense if considered in a vacuum. I think there are other facts, and if you'll give me a moment here, I'll pull up the police report, but there are other facts that are in that initial police report that appear later on in the report. I mean, if you turn to the very end, for example, and I'm looking at Joint Appendix 126 and 127, this is the reporting officer there and what I call the report. The very second to last line, Sergeant Ball's body camera was activated during the traffic stop. That appears at the end. So if we're talking about chronology, it's not like all this happened and then Sergeant Ball. I'm sorry, tell me where you are? Page 127, Joint Appendix 127. 127. Second to last sentence, Sergeant Ball's body camera was activated during the traffic stop. Gotcha. Right, so you're saying, right, it doesn't say this expressly. It sort of gives a bunch of facts, but that doesn't necessarily mean they happened in that order. And I think what's also critical here is that Sergeant Ball, both through his discovery responses and in his affidavit, made very clear that he did not know the vehicle was stolen until he called VIN after he had already apprehended Mr. Torres. So he admits that under oath in multiple places. Again, his interrogatory responses, his discovery responses, were a couple months before he filed his affidavit in support of his own motion for summary judgment. So that story did not change, and he made clear in the discovery process that that sequence of events was. So it's really like where he says Sergeant Ball continued to follow. The registration plate on the vehicle was X, and NCIC inquiries showed that the vehicle was stolen. The vehicle turned into the private driveway. Like there almost should have been like parentheses around the inquiries showed that the vehicle was stolen. Like that's just P.S. We found out later it was stolen. Yes, Your Honor, I will say that I haven't met very many Walt Whitmans in my experience with law enforcement officers. Not to say that they're not intelligent, but they're not employed for their writing skills typically. So I do want to make one point about qualified immunity to the extent the panel, you know, is considering it. Qualified immunity shields, and I know my time is running low here, so I'll make this quick. Qualified immunity shields officers from liability for making closed calls, judgment calls. It only imposes liability when an officer has transgressed a bright line, and it protects everyone except for those who are plainly incompetent. Sergeant Ball here was not plainly incompetent. I'm giving you, you know, his work history, his many years of law enforcement experience, and this, I believe, is one of those closed calls. So even if, and I don't concede this, but even if there were a Fourth Amendment violation here and we get to step two of the qualified immunity analysis, I don't believe that the law would have been clearly established at the time for Officer Ball to know that him stopping Jonathan Torres, believing he had Jonathan Torres in the vehicle, stopping Jonathan Torres, and then ultimately what took place after that, the search and seizure. I don't believe he would have known, with all the facts he had at his disposal, the criminal history, the make and model of the car from the tip, everything from him, the information about Torres himself, and what he observed leading up to the stop. I don't believe, with all that at his disposal, that he would have known that he's still committing a constitutional violation based on the law in this circuit. And I would represent that qualified immunity should still apply here, that defense should be granted, and the end result of this case is the same under those circumstances. Thank you, Your Honor. Thank you, Mr. Ingersoll. Ms. Spears? May it please the Court? Sophie Spears for Appellant Jonathan Anthony Lee Torres. I'd like to return to actually the first question that Judge Thacker asked my colleague, Mr. Sanders, about whether we were questioning Sergeant Ball's credibility and are we saying that he's lying. And I don't think that questioning his credibility based on the fact that he did, as Judge Harris just pointed out at the end of Mr. Ingersoll's argument, that Sergeant Ball changed his reasoning for pulling the car over. I think that it's pretty clear from the police report that the implication is that the car was pulled over because it was stolen. Then two years later, this affidavit comes that alleges the car was pulled over because of this confidential informant's tip, which was included, but now it's been transformed to the center of the appellee's argument as to why they pulled over Mr. Torres. And I think when you take those inconsistent statements, that really makes the reasonable suspicion question a bigger one. It makes the reasonable suspicion that Sergeant Ball had questionable. He can no longer rely on the fact that the car was stolen to justify the stop, and the reliability of the confidential informant becomes much more important. So Sergeant Ball's credibility is in question. We're not alleging that he's lying in any way, but instead that there should be a closer look at not only who the confidential informant was, but also what the tip contained. And when you actually look at what the tip contained, it's extremely vague, and the predictive behavior that it contains that Sergeant Ball confirmed doesn't actually... Wasn't there a discovery in this case? There was, Your Honor. So wasn't there an opportunity during the discovery stage for a closer look at who this informant was? Yes, so our client was proceeding pro se at the lower court level, and he was moved eight times during the course of this litigation. He was under the impression that he had representation during discovery, and then later found out that the NCPLS, which is the North Carolina Prison Legal Services, was not able to take his case because this alleged misconduct did not happen in a prison. And he found that out, I think, a month before discovery closed. So he was conducting discovery and representing himself from prison, which is why there's such limited discovery. And we asked that the court apply the liberal pleading standard to pro se pleadings. You said that the tip was vague? Yes. And I don't understand that. A vague tip is like if, you know, someone says, this Torres guy is up to some shady stuff. I probably shouldn't try to write dialogue, but you know what I mean. This is, like, extremely specific. The officer says, I'm looking for a Torres guy, and he's like, okay, here's his address. Here is literally the address at which you can find him and the car that he drives. That seems extremely specific. Yeah. So I think what's vague about the tip is that there's nothing about what time he might find Mr. Torres there. There's nothing about, there's also no investigation on Sergeant Ball's part as to, yeah. But that doesn't go to the vagueness of the tip, like what Sergeant Ball does or doesn't do. Yeah. I mean, it seems like it gives him everything he needs. Here's where you'll find him. I mean, the fact that it omits a time, to me, I would understand it to mean, like, pretty much all the time, that's where he is. The tip is vague because it could apply to anyone. So there's, yes, the confidential informant is saying that this tip is about Mr. Torres. But when you take the information that's contained within the tip, which is the address and the car, just looking at those two things and confirming that they are accurate doesn't tell you if Mr. Torres is in that car or not. And that is why it's vague, because the only way that, well, I'll get to that in a second, but one of the only ways that Sergeant Ball could verify the tip is by looking and seeing who's driving the car. Although I would like to take this opportunity to point out that the amount of investigation that Sergeant Ball did was very little. And the investigation that he did do actually contradicted the contents of the tip. So on February 26th and February 27th, he received information that Mr. Torres was residing at 45 Edwards Road. Because we don't know anything about the confidential informant. We don't know when he spoke to the confidential informant. Can I interrupt for a second? Yes. So obviously if the officer had seen Torres in the car, we wouldn't be here because he knew who he was. He'd seen a picture of him. So I guess the question is how much more information and what information do you think the officer would have needed, short of actually seeing your client in the car? So first of all, whether or not Sergeant Ball actually saw a male walking around the cars in dispute, that is a change from the police report to the affidavit. But secondly, he doesn't allege any or he doesn't state that he noticed anything about this figure. He says a male figure. He doesn't say a male figure with tattoos. He doesn't say a male figure that's 6 feet tall, 190 pounds, similar to Mr. Torres. He doesn't say a male figure who looks Hispanic, which is Mr. Torres' ethnicity. There's nothing that actually provides any detail about how this male figure looks similar to Mr. Torres. Further, Sergeant Ball could have pulled the property records for 130 Flattop Mountain Road, and if he had, he would have seen that Mr. Torres is not connected to that address because he already had Mr. Torres' address, which was not 130 Flattop Mountain Road. And he didn't pull any of Mr. Torres' registrations to see if he was associated. Yes, the car was stolen, but he didn't see if he was associated with any cars. There's no indication that he did any investigation other than driving by 130 Flattop Mountain Road to verify the information in this tip, and just pulling the car over with your gun drawn and assuming that it's Mr. Torres, the confidential informant could have been calling if they knew your house and your address, and they were a known confidential informant, they could allege that any criminal is driving your car at your house. Whoa, whoa, whoa, whoa. And that would give Sergeant Ball the ability to just pull that car over. There's something we worry about, I think, more with anonymous tips, right? Because then, like, someone could be up to no good. Again, I don't think there's any doubt here that this is someone Ball at least knows who this person is, whether or not he justifiably knows him to be reliable or not. Putting that to one side, like, if this guy sends him to Judge Diaz's house, he's probably going to get in trouble, right? Certainly. I will point out that an important factor in considering the indicia of reliability of a tip is whether or not the informant can be held accountable, and in North Carolina, it is not illegal to provide false. It may not be illegal, but I am confident that if this is Sergeant Ball's confidential informant, there will be consequences if he shows up at Judge Diaz's house. I agree with you. I would like to continue to answer that question. I see that I've run out of time. No, go ahead. Yeah, thank you. So... Sorry. Interruption. Okay. In terms of whether or not this confidential informant could be held accountable, and it's... So our RAS argument is that if the confidential... Even if we credit everything about the confidential informant, there still isn't enough reasonable suspicion because the tip doesn't provide enough detailed information to link it to Mr. Torres. But then, when you have a vague tip, you need to be able to look to the confidential informant and look to their reliability, look to their record, look to where were they, how did they talk to Sergeant Ball? Did they talk to Sergeant Ball on the telephone? Was Sergeant Ball able to evaluate their demeanor? So the question about the confidential informant isn't even whether or not the confidential informant existed. It's how much can we rely on this confidential informant based on the circumstances surrounding their disclosure to Sergeant Ball? Even if Sergeant Ball could trust them because they're a known confidential informant, we still don't know the basis of their knowledge, and that would lend more credence to the tip. It would be in the appellee's benefit to provide more information about the confidential informant and why that confidential informant is so reliable, and that would make up for how vague and generic the tip is. So if I'll just have the chance to close, we do ask this Court to remand and reverse on the basis that Sergeant Ball made inconsistent statements related to why he pulled the car over, the basis for his reasonable suspicion, and he acted on what could be characterized as an unreliable tip just based on the lack of information surrounding the tip and the confidential informant with doing very little investigation and the knowledge he did have actually contradicted the tip. And on that basis, he pulled over a car at gunpoint. So we ask that this Court reverse and remand. Thank you so much. Thank you. Thank you, Ms. Spears. Mr. Torres might not have had representation at the District Court, but he certainly had able representation here today. I want to thank you and your colleagues and the leader of your crew, Mr. Harawa, for taking on this Court assignment, which is really important. Obviously, we couldn't do the work that we do without able lawyers, in this case students, to come and represent the interests of justice in this case. And, Mr. Ingersoll, I thank you as well for your able arguments. We'll come down and greet counsel and adjourn for the day.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris